SÁNCHEZ ET AL., DEMANDANTES Y APELANTES, *v.* VADI ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en pleito sobre tercería de bienes inmuebles.

No. 1608.—Resuelto en julio 13, 1917.

TERCERÍA DE BIENES INMUEBLES—BIENES ADQUIRIDOS POR EL PADRE PARA EL HIJO—PROCEDENCIA DEL DINERO INVERTIDO EN LA COMPRA.—En un pleito de tercería de bienes inmuebles establecido por un hijo para que se declare que la propiedad embargada le pertenece por haberla adquirido su padre para él siendo menor de edad, no debe el hijo limitarse a alegar sino que debe probar en el juicio la procedencia del dinero invertido en la compra. Si no presenta tal prueba, puede concluirse que el bien adquirido pertenece al padre y no al peculio adventicio del hijo.

ID.—CANCELACIÓN DE INSCRIPCIÓN.—En un pleito de tercería de dominio, puede la corte, al dictar su sentencia declarando sin lugar la tercería, decretar conforme al artículo 79 de la Ley Hipotecaria, la cancelación de la inscripción hecha en el registro de los bienes en cuestión a favor del tercerista. También puede ordenar la inscripción de dichos bienes a nombre de la persona que en realidad sea el dueño legítimo de ellos.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Honoré & Iriarte.*

Abogados de los apelados: *Sres. Feliú & Alemañy.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un caso de tercería. Embargada a los efectos de ejecutar cierta sentencia una finca urbana como de la propiedad de José Sánchez Gil, los demandantes alegaron que eran ellos y no Sánchez Gil los dueños de la propiedad. Los demandantes dirigieron su acción contra Luis Vadi, el actor en pro de quien se dictó la sentencia a que nos hemos referido, contra el márshal que practicó el embargo y contra Sánchez Gil. Sólo contestó y compareció al juicio Vadi que negó las alegaciones de los demandantes y sostuvo como materia nueva que el contrato por virtud del cual los demandantes aparecen adquiriendo la propiedad de la casa en cuestión, fué simulado. La corte decidió el pleito en contra de los demandantes, basándose en los siguientes hechos que declaró probados:

"I. Que en 25 de marzo de 1909, por escritura pública otorgada ante el Notario de Mayagüez, Licenciado Rodolfo Ramírez Vigo, y que se inscribió en el registro de la propiedad de este distrito hipotecario en abril 7 del mismo año, el demandado José Sánchez Gil adquirió de Juan Ramón Villafaña, la siguiente finca urbana: (se describe). 

"II. Que se hizo constar en dicha escritura (*exhibit* 'B' de los demandantes) que el precio de dicha finca se satisfizo al vendedor por el propio José Sánchez Gil, con anterioridad al otorgamiento de la misma; que 'el comprador José Sánchez Gil' habría de entrar en posesión de dicha finca sin otro requisito que el otorgamiento de dicho documento; que la venta se convino con el demandado Sánchez Gil, y que se hizo a éste para sus hijos, entonces menores de edad, que son los demandantes.

"III. Que esta misma finca fué adquirida por Juan Ramón Villafaña, del propio José Sánchez Gil, el día anterior a la venta que se deja relacionada, por otra escritura pública otorgada ante el propio notario, y que también se inscribió en el registro de la propiedad en la misma fecha que la ya mencionada, apareciendo realizada una y otra venta, también por un mismo precio (*exhibit* 'A' de los demandantes).

"IV. Los demandantes no aportaron evidencia alguna con relación al origen o procedencia de la suma de dinero con que se efectuó

la compra en cuestión, aun cuando alegan en su demanda que dicho dinero procede de la herencia de su señora madre Carmen Alequín, la que lo hubo. a su vez, por concepto de gananciales habidos en su matrimonio con el dicho José Sánchez Gil. Tampoco hay evidencia alguna en cuanto a la alegación hecha en su demanda al efecto de. que han usufructuado la finca, bajo la administración de su Sr. padre, el ahora demandado y repetido, José Sánchez Gil.

"V. La corte encuentra probado que la ya descrita finca fué embargada por el marshal de esta corte, Nestor Gregory, en virtud de un mandamiento de ejecución que se libró en el caso No. 5098, seguido también en esta corte por Luis Vadi contra José Sánchez Gil, para hacer efectiva la sentencia en dicho caso recaída, y que el expresado márshal puso dicha finca a la venta en pública subasta por medio de edictos.

"VI. En tales circunstancias, y considerando las alegaciones de los demandantes y del demandado, Luis Vadi, único que ha contestado la demanda, y teniendo, además, en consideración el conjunto de la prueba, la corte llega a la conclusión de que el dinero con el cual se adquirió la finca en litigio para los demandantes, era de su padre el demandado José Sánchez Gil, y por tanto, fué ésta una adquisición hecha con caudal de este último."

No conformes los demandantes, interpusieron el presente recurso de apelación señalando la comisión por parte de la corte de distrito de cuatro errores, a saber: 1, al declarar que la finca en cuestión ha sido siempre de la propiedad de Sánchez Gil y no de los demandantes; 2, al ordenar la cancelación de la inscripción de dicha finca hecha en el registro a favor de los demandantes; 3, al ordenar que se extienda una nueva inscripción a favor de Sánchez Gil, y 4 al condenar a los demandantes al pago de las costas y de los desembolsos y honorarios de abogado.

Debe advertirse que los únicos elementos que tenemos para decidir este recurso son las alegaciones de las partes y la sentencia de la corte. Las pruebas practicadas no se han elevado a este tribunal. Hecha esta advertencia, pasaremos a considerar los errores señalados.

1. En la demanda se consignó que el dinero empleado por los demandantes en la compra de la casa, procedía de su

herencia materna. Los demandantes son menores de edad, excepto uno que fué emancipado por virtud de matrimonio, y la compra se verificó en las condiciones que se expresan en el hecho II de los declarados probados por la corte de distrito. El padre aparece adquiriendo para sus hijos. Bajo tales circunstancias, los demandantes no debieron limitarse a alegar sino que debieron probar en el juicio,—lo que no hicieron,—según la corte sentenciadora,—la procedencia del dinero invertido en la compra.

La ley aplicable a esta materia está contenida en los artículos 225, 226 y 227 del Código Civil, iguales al 160, 161 y 162 del Código Civil español. Comentando estos últimos artículos se expresa Manresa, así:

"De la letra de los tres artículos que comentamos se desprende que atienden, no, como en nuestro antiguo derecho trasunto del romano, a la persona por medio de la cual se adquieren los bienes, sino principalmente al origen de la adquisición; y cuando, por ejemplo, se trata de una compraventa, es indispensable conocer de donde procede el dinero que se ha entregado como precio, puesto que serán muy diversos los derechos del hijo, según pertenezca al caudal paterno, proceda de su propio trabajo o le haya sido legado por un tercero. Si se carece de estos datos, ¿qué criterio se adopta? Nuestra jurisprudencia ha establecido, señaladamente por la sentencia de 14 de enero de 1861 'que no pueden estimarse como del peculio adventicio de los bienes que compre un hijo de familia cuando no prueba que ha ganado la cantidad con que los adquiere por industria u otro medio de los que la ley determina.' De suerte que generalizando dicho principio, para que al hijo se le reconozcan derechos sobre los bienes que adquiera, es necesario, en caso de litigio, que pruebe que le corresponden." 2, Manresa, Código Civil Español, 34.

La sentencia del Tribunal Supremo de España citada por Manresa, se basó en los siguientes hechos: José Pajares debía a Manuel Rodríguez cierta suma y le vendió en pago de ella dos casas y un huerto. Al día siguiente Rodríguez otorgó otra escritura consignando que la venta anterior la había aceptado a voz y nombre de Felipe Pajares, hijo del vendedor, el cual le había satisfecho la suma adeudada por su padre,

de la que podía disponer como adquirida por su industria y fortuna particular. Se siguió ejecución contra José Pajares en pleito que contra él entablaran Doña Ramona Sánchez y otra y se anunció la venta de las casas y el huerto como de la propiedad de José Pajares. Entonces Felipe Pajares, el hijo, entabló demanda de tercería, que fundó en el resultado de las escrituras de que se ha hecho mérito. El Supremo confirmó la sentencia por virtud de la cual se declaró sin lugar la tercería. El motivo que tuvo fué el siguiente:

"Considerando que fundándose el presente recurso en la infracción de la ley 5ª., tít. 17, Partida 4ª., que define el peculio adventicio, y no habiendo suministrado el demandante prueba alguna que hubiera podido apreciar la sala sentenciadora, acerca de haber adquirido por industria, por obra de sus manos o por alguno de los otros medios que aquélla determina la cantidad invertida en la compra de las dos casas y huerto en cuestión, al desestimar la misma sala la tercería interpuesta no ha infringido la expresada ley;" 6 Jurisprudencia Civil, 28, 29.

Citan los apelantes en apoyo de su contención la decisión de esta corte en el caso de *Fuentes* v. *El Registrador de Caguas,* 24 D. P. R. 619. Pero tal decisión en vez de favorecerles, les perjudica. Esta corte dijo:

"Las adquisiciones hechas por los padres en representación de los hijos que están bajo su patria potestad más bien pueden compararse con las adquisiciones hechas por un mandatario a nombre de su mandante, y así como el mandatario al adquirir para su mandante no está obligado a justificar que pertenece a éste el dinero con que verifica la adquisición, tampoco puede exigirse al padre que adquiere a nombre de su hijo que acredite ser de la propiedad de éste el dinero con que adquiere. Sólo en caso de litigio sobre la legitimidad de la adquisición podrá exigirse la prueba que prematuramente exige el registrador."

Y aquí precisamente se trataba de un litigio, siendo, por tanto, necesaria la prueba de la procedencia del dinero empleado en la adquisición. Si no se presenta tal prueba, puede concluirse como concluyó correctamente la corte de distrito

en este pleito, que el bien adquirido pertenece al padre y no al peculio adventicio del hijo. Además, la corte, según consignó en el sexto de los hechos probados, estimó que el dinero era del padre tomando en consideración el conjunto de la prueba y ya hemos advertido que esa prueba no se ha.elevado por los apelantes a este tribunal.

Por deferencia a la parte apelante hemos tratado en la forma que dejamos expuesta el primer motivo del recurso, pues faltando como falta escrito de exposición del caso, nos hubiera bastado consignar que era indiscutible en apelación la apreciación de las pruebas por parte del tribunal sentenciador y teníamos que aceptarla como base para resolver las cuestiones de derecho envueltas en el pleito.

2. ¿Cuál fué la cuestión fundamental sometida por las terceristas a la corte de distrito? La relativa al dominio de la finca. Esta había sido embargada a instancias del demandado Vadi como de la propiedad del demandado Sánchez Gil. Los demandantes no probaron a juicio de la corte que eran los dueños. Al contrario, la corte resolvió que el verdadero dueño era Sánchez Gil. De los documentos sometidos a la corte, aparecía que la finca en el registro estaba inscrita a favor de los demandantes. ¿Debía la corte al decidir que la finca no pertenecía a los demandantes, permitir que un hecho contrario a su pronunciamiento continuara existiendo en el registro? Conviene hacer constar que la cancelación de la inscripción a favor de los terceristas fué solicitada por el demandado Vadi en su escrito de contestación. El debate quedó claramente planteado desde el primer momento oportuno para ello.

La Ley hipotecaria dedica su título IV a la extinción de la inscripción y de la anotación preventiva. Una vez que se ha verificado una inscripción, queda bajo el amparo de la ley y no puede extinguirse sino por los medios que la misma señala. Uno de esos medios es la cancelación que puede pe-

dirse y debe decretarse entre otros casos que fija el artículo 79 de la ley, en aquel en que quede extinguido por completo el derecho inscrito.

¿Quedó, por virtud de la sentencia dictada en el pleito de tercería, extinguido por completo el derecho de los demandantes sobre la finca inscrita a su favor en el registro? Ciertamente que sí. Luego, la corte, de acuerdo con la ley, pudo decretar la cancelación solicitada por el demandado Vadi.

Véase lo que a este respecto dicen los comentaristas Galindo y Escosura:

"Para obtener la ejecutoria, declara el art. 83 de la L. H. que habrá de ser demandado el acreedor en juicio ordinario (v. S. de 20 de marzo 1873), y fundándose en la letra de este artículo, algunos entienden que la sentencia dictada en el pleito de tercería de dominio, absolviendo al demandado, no es título suficiente para cancelar la inscripción hecha a nombre del actor; pero la Dirección, inspirándose en el espíritu del R. D. de 20 de mayo, 1880, teniendo en cuenta que la sentencia es ley para el caso particular en que se dicta, declaró en 21 de noviembre 1881, que procedía la cancelación denegada por el registrador." 3 Legislación Hipotecaria, p. 67 (4ª. ed.).

A continuación transcribimos los considerandos y la parte dispositiva de la resolución citada por Galindo:

"Considerando que la cuestión sobre que versa este recurso consiste en determinar si procede cancelar la inscripción de propiedad de Jacoba Vidal en virtud de la sentencia ejecutoria recaída en el pleito de tercería de dominio promovido por dicha interesada, a inscribir después a favor del adjudicatario Villar de Francos:

"Considerando que la citada ejecutoria constituye un verdadero título de extinción de los derechos de doña Jacoba Vidal sobre las fincas embargadas, como lo prueba el que la tercería es un juicio declarativo que lleva consigo la excepción de cosa juzgada, y el que terminado el pleito por la absolución de la demanda, siguióse la ejecución adelante, procediéndose a la enajenación de las fincas cuyo dominio disputaba aquella señora:

"Considerando que los asientos del registro tienen por objeto dar publicidad a los derechos civiles que en ellos constan, de donde se

infiere que extinguidos éstos por una sentencia judicial, aquéllos deben forzosamente caducar, como que toman su fuerza y raíz de los indicados derechos:

"Considerando que confirman esta doctrina la Resolución de 8 de febrero de 1877 y los principios en que descansa el Real Decreto de 20 de mayo de 1880, puesto que si puede prescindirse del consentimiento de los interesados en una cancelación cuando la misma ley declara fenecidos los derechos inscritos, lo propio debe acontecer cuando la extinción arranca de una sentencia ejecutoria; no sólo porque la santidad de la cosa juzgada es un precepto del legislador, sino también porque una sentencia tiene fuerza de ley para el caso particular en que se dicta:

"Considerando que no obsta a esta solución el precepto contenido en el párrafo tercero del artículo 83 de la Ley Hipotecaria, porque ésta parte del supuesto de que sea necesario el consentimiento de los interesados; y en el caso del recurso tal consentimiento es innecesario, porque la que ostentó el título de dueño fué privada de su derecho mediante una providencia ejecutoria, bastante por sí sola para la cancelación, según el artículo 82 de la misma ley:

Considerando que, si a pesar del pleito de tercería ya ejecutoriado hubiera de seguirse ahora un nuevo juicio contra Doña Jacoba Vidal para obtener la cancelación del asiento de dominio, hecho a su favor, se originarían gastos y dilaciones innecesarios, dado que en este segundo litigio no versaría en último resultado la cuestión más que sobre el mismo derecho de propiedad, que definitivamente quedó resuelto en la primera sentencia judicial:

"Considerando que, con arreglo al artículo 20 de la ley, para inscribir un título traslativo de dominio debe constar inscrito el derecho a favor del transferente, por lo que, aun después de cancelada la inscripción hecha a favor de doña Jacoba Vidal, no es posible inscribir las fincas a nombre del recurrente Villar de Francos, si previamente no se registra el derecho de Antonio Rosende, o se obtiene una sentencia ejecutoria en el correspondiente juicio:

"Esta Dirección general ha acordado, con revocación de la providencia apelada, resolver que procede cancelar la inscripción de dominio hecha a favor de doña Jacoba Vidal mediante la presentación del testimonio de la sentencia recaída en el juicio de tercería; pero sin que pueda inscribirse la adjudicación a favor de D. Gabriel Villar de Francos mientras no consten inscritas las fincas a nombre de D. Antonio Rosende, según lo prevenido en el artículo 20 de la Ley Hipotecaria."

3. Si la corte tuvo autoridad para decretar la cancelación, es lógico que la tuviera también para decretar la nueva inscripción a favor de aquel que resultó ser el verdadero dueño. La totalidad del asunto estaba ante la corte y la corte pudo y debió dejarlo como lo dejó totalmente resuelto por su sentencia.

Se ha sostenido por los apelantes que la corte no pudo acordar los pronunciamientos a que acabamos de referirnos, sin que se hubiera hecho parte en el pleito al vendedor de la casa en cuestión. A nuestro juicio no hubo necesidad de ello. Juan Ramón Villafaña vendió a Sánchez Gil, consignando Gil en la escritura que adquiría para sus hijos. La venta en sí queda intacta. La sentencia dictada en nada afecta los derechos de Villafaña. El precio de la venta fué recibido por él. Nada quedó pendiente. El contrato no se realizó teniendo en cuenta ninguna consideración personal con respecto al comprador.

4. Este es un caso en que se solicitó por el demandado Vadi que se impusieran a los demandantes las costas, gastos y honorarios de abogado y en el que de acuerdo con la ley pudieron imponerse tales costas, gastos y honorarios. No se ha demostrado que la corte abusara del poder discrecional de que está investida. No tenemos a la vista las pruebas que se practicaron en el juicio, y bajo tales circunstancias no podemos ni debemos alterar la conclusión a que llegara la corte de distrito.

Debe confirmarse la sentencia recurrida.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.