Belarmino Álvarez Feito, demandante y apelante, *v.* Secretario de Hacienda de Puerto Rico, demandado y apelado.

Número 11037.

*Sometido:* 8 de marzo de 1954. *Resuelto:* 14 de junio de 1955.

*Heriberto Torres Solá,* abogado del apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 1ro. de julio de 1941, el demandante y apelante en este caso don Belarmino Álvarez Feito, socio de la anterior Mercantil Sobrinos de Villamil, le instruyó a los liquidadores de dicha mercantil, que en pago de su haber social o precio de enajenación de su participación en dicha sociedad, se le expidieran a cada uno de sus hijos Belarmino Álvarez García de doce años de edad y José Luis Álvarez García de nueve años de edad, un certificado de acciones del capital social de la nueva corporación creada para continuar los negocios de la

sociedad disuelta. En virtud de dicha solicitud, la corporación expidió el 1ro. de julio de 1941, el certificado núm. 9 por ciento cincuenta acciones con un valor de cien dólares cada acción a favor del menor don Belarmino Álvarez García y el certificado núm. 10 por ciento cincuenta acciones con un valor de cien dólares cada acción a favor del menor don José Luis Álvarez García.

Dicha donación familiar o cesión de capital corporativo permaneció inalterada hasta el 29 de junio de 1942, en cuya fecha, don Belarmino Álvarez Feito, ahora acompañado de su esposa doña Laura García, compareció ante el notario de esta Isla don Heriberto Torres Solá para transformar en dos fideicomisos independientes la donación o cesión de los certificados de acciones que había realizado a favor de sus dos hijos. En la escritura pública que se otorgó a tal efecto, el demandante y apelante expuso que fué su propósito al solicitar se librasen los certificados de acciones constituir con ellos "un fideicomiso a favor de sus hijos don Belarmino y don José Luis Álvarez García de doce y nueve años de edad, respectivamente, estudiantes y vecinos de Río Piedras". En la primera cláusula de otorgamiento los padres crean un fideicomiso, por acto inter-vivo, "con efecto retroactivo al día 1ro. de julio de 1941". En esa misma escritura comparecieron los dos fiduciarios señores Nicolás Vargas García y Ángel Joglar Suárez para aceptar la designación de fiduciarios y la entrega de los certificados.

Después de realizadas dichas operaciones, el 27 de junio de 1950, el entonces Tesorero de Puerto Rico le notificó al demandante y apelante, una determinación final de deficiencias en la contribución de ingresos del demandante y apelante por los años 1943, 1944 y 1945, ascendentes a la cantidad de $5,449.26, tabuladas de la manera siguiente:

| | |
|---|---|
| 1943 | $237. 22 |
| 1944 | 2, 128. 81 |
| 1945 | 3, 083. 23 |

que representaban las contribuciones sobre ingresos de los dividendos de las acciones fideicomitidas.

El demandante y apelante señor Belarmino Álvarez Feito acudió al anterior Tribunal de Contribuciones de Puerto Rico, solicitando que se dejara sin efecto la imposición, puesto que representaba ganancias de bienes fideicomitidos declaradas a su debido tiempo por el fiduciario. El anterior Tribunal de Contribuciones de Puerto Rico sostuvo al anterior Tesorero de Puerto Rico y de tal pronunciamiento, el demandante y apelante ha apelado ante nos.

Del señalamiento de errores surgen tres cuestiones litigiosas principales de la resolución de las cuales depende la resolución del caso. La primera cuestión es la siguiente: el traspaso de acciones realizado por el demandante y apelante a favor de sus hijos menores de edad, en 1ro. de julio de 1941, ¿lo despojó de todo derecho a disponer de esas acciones para la creación posterior del fideicomiso? El señor Secretario de Hacienda nos arguye que habiendo donado el demandante y apelante dichas acciones el 1ro. de julio de 1941, no podía disponer posteriormente de ellas para crear un fideicomiso sin la autorización legal correspondiente. El contribuyente por el contrario, nos arguye que él no se despojó de la propiedad hasta que se creó el fideicomiso puesto que eran bienes del caudal paterno adquiridos por unos menores que vivían en compañía de sus padres, y con cierta prudencia nos arguye que tanto el traspaso de acciones realizado el 1ro. de julio de 1941 como la creación del fideicomiso el día 29 de junio de 1942 constituyeron un solo negocio jurídico, puesto que el fideicomiso se constituyó con efecto retroactivo al 1ro .de julio de 1941.

Partiendo de la base que las acciones fueron donadas cuando se hizo el traspaso de ellas el 1ro. de julio de 1941, es indudable que estaríamos frente a un caso de una donación imperfecta, o sea insuficiente como título lucrativo, no solo por la evidente falta de aceptación que demuestra la prueba, sino porque cualquiera donación de un caudal paterno a un

hijo menor de edad que viva en compañía de su padre, produce la anomalía en derecho de ser una donación en beneficio del propio donante.

■■ En cuanto a la capacidad del menor para aceptar una donación por sí mismo, queremos referirnos a la siguiente glosa de Castán: "la doctrina tradicional reflejada en el Derecho romano y antiguo español, graduaba la incapacidad de los menores distinguiendo estos tres períodos: infancia (hasta los siete años), impubertad (hasta los doce o catorce) y pubertad. En el primero de ellos, el menor no podía intervenir en ningún acto de la vida civil. En el segundo, podía concurrir a los actos con el tutor y podía por sí solo adquirir derechos. En el tercero podía realizar por sí muchos actos, aunque para otros necesitaba intervención del curador. El Código Civil, al fundir las antiguas instituciones de la tutela y la curatela, ha abolido la distinción de fases de la menor edad unificando la condición de los menores, *pero todavía señala algunas edades especiales con relación a determinados derechos.* Por otra parte, la condición y capacidad general de los menores no está establecida con claridad en el Código. Como es indudable, sin embargo, que la regla general es la incapacidad de los menores (suplida por la institución de la patria potestad o, en defecto de ella, la de la tutela) presentaremos a continuación los casos excepcionales en que se reconoce capacidad de obrar a los menores no emancipados ni habilitados por edad . . . B-3: aceptar donaciones que no sean onerosas arts. 625 y 626", (equivalentes a los arts. 567 y 568 del Código Civil de Puerto Rico) 1 Castán: Derecho Civil Español, Común y Foral 369 et seq. (séptima ed. del Instituto Editorial Reus del 1949).

Del segundo escolio de la glosa de Castán recogemos la siguiente aseveración: "aunque del Código parece desprenderse que pueden los menores aceptar las donaciones simples aún sin la intervención de sus legítimos representantes, Morell observa atinadamente que esa regla requiere posibilidad de aplicación y que, cuando se trate de un *niño* será preciso que

se realice por aquéllos la aceptación, según se deduce de los arts. 627 y 631" (equivalente a los arts. 569 y 573 del Código Civil de Puerto Rico, referentes a donaciones hechas a los concebidos y no nacidos, cuyas donaciones podrán ser aceptadas por las personas que legítimamente las representarían si se hubiese verificado ya su nacimiento y a las diligencias de notificación de la aceptación que deben verificar las personas que acepten una donación en representación de otras).

La posibilidad de aplicación a que se refiere Morell no es sólo la posibilidad de conciencia, saber de lo que se trata el acto que se realiza, sino también la posibilidad física, pues difícilmente un infante de tres meses de nacido podría comparecer ante un notario a aceptar una donación. Posiblemente igual regla práctica podría aplicarse durante todo el período de la impubertad, o sea mujeres menores de doce y hombres menores de catorce años, aplicando por analogía la regla 2ª del art. 168 del Reglamento Notarial español, todavía vigente en Puerto Rico.

Felizmente en este caso no hay prueba específica sobre la aceptación de los menores por sí mismos, o por alguna persona en representación de ellos, de la donación que se intentara realizar. Tampoco existe prueba del consentimiento a la cesión, si en vez de donación, llegáramos a la conclusión que el registro de acciones constituyó en realidad de derecho, la cesión de un título-valor.

Hemos afirmado que cualquiera donación de un caudal paterno hecho a favor de un hijo menor de edad que viva en compañía de sus padres, produce la anomalía en derecho de ser una donación en beneficio del propio donante, porque el art. 156 del Código Civil de Puerto Rico dispone que: "pertenece al padre o a la madre en propiedad y en usufructo lo que el hijo adquiera con caudal de cada uno de ellos". Aunque el art. 156 se refiere a bienes dados por los padres a hijos menores de edad para que trabajen con ellos, la glosa más confiable de los comentaristas españoles lo han relacionado con la teoría del peculio romano, estableciendo la diferencia entre

el peculio profecticio y el adventicio: 1 Oyuelos Digesto 270, (ed. de Sobrinos de la Sucesión de N. Minuesa de los Ríos de 1917), quedando cubiertos todos los bienes de los hijos menores de edad que provengan del caudal de sus bienes, siendo necesario para tal caso investigarse el origen de la adquisición, 2 Manresa: Comentarios al Código Civil Español 45 (sexta ed. del Instituto Editorial Reus del 1944). Si la adquisición no demuestra que los bienes se adquirieron con dinero propio del hijo menor, no se pueden estimar como pertenecientes al peculio adventicio, y por el contrario, se reputan profecticios, por lo cual pertenecen al padre tanto en propiedad como en usufructo.

Basándose en la anterior glosa de Manresa se falló por este Tribunal el caso de *Sánchez et. al.* v. *Vadi et. al.,* 25 D.P.R. 559 (*Del Toro*), (1917), cita precisa a la pág. 562 seguido en *González* v. *Registrador,* 38 D.P.R. 854 (*Wolf*), (1928), cita precisa a la pág. 855. No habiendo prueba en contrario en cuanto a que dichos bienes se adquirieron con dinero propio del menor, y habiéndose probado que se adquirieron con dinero del padre, no importa cuál haya sido el título lucrativo, forzoso nos es concluir que dichos bienes pertenecían el 29 de junio de 1942 al demandante y apelante y a su esposa, y que por lo tanto, ellos podían crear posteriormente un fideicomiso sobre dichos bienes en favor de sus hijos menores de edad.

La segunda cuestión es la siguiente: el fideicomiso creado en este caso, ¿resulta válido de acuerdo con las disposiciones de nuestro Código Civil? La tercera cuestión es la siguiente: el fideicomiso creado en este caso, ¿resulta suficiente de acuerdo con nuestro derecho contributivo para crear la separabilidad de utilidades entre los bienes del fideicomitente y los bienes de los fideicomisarios? Hemos agrupado las dos últimas cuestiones con el objeto de simplificar el método para resolverlas, por las siguientes razones: (1) Nuestra Ley de Fideicomisos, vigente a la fecha en que se creó el fideicomiso que nos ocupa, es una institución civil tomada de las

disposiciones del fideicomiso panameño. (2) El fideicomiso panameño lo que intentó hacer fué acomodar a las estructuras tradicionales del derecho civil ciertos aspectos funcionales del fideicomiso norteamericano. (3) Nuestra Ley de Contribuciones sobre Ingresos, aplicable a este caso, fué tomada de la Ley de Rentas del 1924 del Congreso de los Estados Unidos. (4) Aunque la jurisprudencia contributiva relacionada con fideicomisos acepta las diversidades de las leyes estaduales, también aplica las normas de equidad del fideicomiso anglosajón y del fideicomiso norteamericano. (5) Aunque nuestra Ley de Fideicomisos hasta cierto extremo es una ley foránea al clásico derecho civil puertorriqueño, al incorporarse a nuestro Código Civil, se limitó expresamente a todo lo que no estuviere específicamente prohibido por el Código Civil de Puerto Rico, (art. 855). Adoptar una actitud extremadamente civilista ante el fideicomiso puertorriqueño podría sacrificar ciertos aspectos funcionales del fideicomiso norteamericano o anglosajón, que si bien no corresponden a la mejor tradición civilista, no resultan tan repugnantes a nuestras instituciones civiles, como para que nos quede vedado su aprovechamiento. Adoptar una actitud extremadamente imitativista sería incorporar a nuestro derecho civil una serie de conceptos foráneos que podrían romper la unidad conceptual y la armonía institucional que distingue a los Códigos Civiles. Como siempre suele suceder, la zona luminosa del entendimiento está en la extrema objetividad.

A la luz de estas reflexiones examinemos ahora el documento de fideicomiso impugnado en el presente caso. Las cláusulas de otorgamiento son las siguientes:

### PRIMERA:

"Don Belarmino Álvarez Feito y su esposa doña Laura García, como fideicomitentes, han entregado a los otros comparecientes don Nicolás Vargas García y don Ángel Joglar Suárez, como fiduciarios, para beneficio de los mencionados don Belarmino y don José-Luis Álvarez García, como fideicomisarios, y tódo mediante la creación de un contrato de fideicomiso, por acto inter-

vivos, con efecto retroactivo al día primero de julio de mil nove-
cientos cuarenta y uno, los dos certificados de acciones que bajo
los números nueve y diez se dejan transcritos en el párrafo pri-
mero de la parte expositiva de esta escritura, de ciento cincuenta
acciones cada uno, de valor de Cien Dólares cada acción de las
comunes del capital autorizado de Sobrinos de Villamil, Inc., el
primero número nueve a favor de don Belarmino Álvarez García,
y el otro número diez a favor de don José Luis de los mismos
apellidos.

### "Segunda:

"El presente contrato debe considerarse como un fideicomiso
independiente y separado a favor de cada uno de los fideicomisa-
rios, de manera que, aunque su montante estuviere en conflicto
con los derechos hereditarios de legítima a favor de los herederos
forzosos, debe siempre considerarse subsistente el fideicomiso en
cuanto al montante que no estuviere en conflicto con la legítima
de tales herederos, o inoficioso, en cuanto a la cantidad que lesio-
nare la referida legítima hereditaria.

### "Tercera:

"Actuará como fiduciario en primer término, en propiedad, el
compareciente don Nicolás Vargas García, y en segundo término
como sustituto, don Ángel Joglar Suárez, quedando la actuación
de éste sujeta al caso en que se hiciere imposible al fiduciario-
propietario, la ejecución del presente fideicomiso, por razones de
ausencia, incapacidad, destitución o fallecimiento. Y se fija
como compensación al fiduciario que así actuare, una remunera-
ción de un dólar mensual.

### "Cuarta:

"En el caso de que se hiciere forzosa la enajenación de las
acciones aquí fideicometidas, el producto de las mismas será in-
vertido por el fiduciario que actuare, en la adquisición de propie-
dad inmueble o créditos hipotecarios para beneficio de cada uno
de los fideicomisarios, en igual forma que lo establecido en este
fideicomiso sobre los transcritos certificados de acciones.

### "Quinta:

"Asimismo el fiduciario hará igual inversión de toda cantidad
procedente de las utilidades de cada uno de los fideicomisarios
que no hayan sido retiradas por éstos, entendiéndose que, los in-

gresos de estas cantidades no retiradas y así invertidas, beneficiarán a cada uno de los fideicomisarios en la proporción correspondiente."

■ 1. Como se ve, se trata de un fideicomiso que no se especifica si es revocable o irrevocable, pero al cual podemos considerar no revocable por disposición expresa de los arts. 834 y 849 del Código Civil de Puerto Rico. En los principios generales del fideicomiso norteamericano se considera irrevocable a menos que el fideicomitente se reserve expresa o implícitamente el poder de revocarlos: 3 Scott *on Trusts* 1813, sec. 332 (ed. de Little, Brown and Company del 1939). Desde el punto de vista del derecho contributivo norteamericano, el fideicomiso irrevocable goza de más favor que el fideicomiso revocable o controlado: 6 Merten's: *Law of Federal Income Taxation* 409, sec. 37.01 (ed. de Callaghan and Company de 1949) 166 A.L.R. 1320, et seq. (1947), pero la irrevocabilidad sólo constituye uno de los indicios favorables a la separabilidad de las utilidades.

■■ 2. En el presente fideicomiso no se especifican los fines para los cuales se crea el fideicomiso. En la exposición de la escritura pública donde se crea el mismo, lo único que se especifica es *"que fué el propósito* del compareciente don Belarmino Álvarez Feito, al así solicitar se librasen los transcritos certificados de acciones, *constituir* con ellos como fideicomitentes, por sí y a nombre de sus herederos, albaceas, administradores o causahabientes un *fideicomiso a favor de sus nombrados hijos* don Belarmino y don José Luis Álvarez García de doce y nueve años de edad, respectivamente, estudiantes y vecinos de Río Piedras, Puerto Rico, como fideicomisarios, y a ese efecto, los comparecientes ahora, ratificando todo acto y propósito a tal fin encaminado, por medio de las siguientes cláusulas otorgan . . . Don Belarmino Álvarez Feito y su esposa doña Laura García, como fideicomitentes, han entregado a los otros comparecientes don Nicolás Vargas García y don Ángel Joglar Suárez como fiduciarios, *para beneficio de los mencionados don Belarmino y don José Luis*

*Alvarez García*, como fideicomisarios y todo mediante la creación de un contrato de fideicomiso, por acto inter-vivos, con efecto retroactivo al día primero de julio de mil novecientos cuarenta y uno, los dos certificados de acciones" . . . .

El art. 855 del Código Civil de Puerto Rico dispone que el fideicomiso puede crearse para cualquier fin y bajo cualesquiera términos o condiciones que no infrinjan la Ley o la moral pública o que se prohiban específicamente en ese Código. Cuando no se especifican los fines para los cuales se crea un fideicomiso, la indagación judicial debe encaminarse a determinar si el fideicomiso creado puede utilizarse para un fin ilegal en cualquier momento determinado. Esto es lo que parece desprenderse del texto puertorriqueño. En los principios generales del fideicomiso norteamericano, la situación es idéntica: 1 Scott *on Trusts* 398, sec. 63, lo mismo cuando se constituya en fraude de acreedores que para defraudar al Estado de sus rentas, sec. 63.1 a la pág. 400 de la obra citada. Desde el punto de vista del Derecho Contributivo norteamericano, la creación de un *trust* para la evitación (*avoiding*) o la reducción (*reducing*) de una contribución no debe ser favorecida, si como cuestión de realidad, las utilidades revierten al fideicomitente, 113 A.L.R. 458 et seq. (1938).

3. En este caso se trata de un fideicomiso creado por dos padres a favor de dos hijos *menores de edad*. Nada hemos encontrado en las disposiciones de nuestro Código Civil referentes a fideicomisos que estén en contra de dicha clase de fideicomiso, cuando se creen a favor de hijos mayores de edad, o emancipados, o cuando la donación la haga una tercera persona a hijos mayores o menores de edad, o emancipados de otra persona. En cuanto a los hijos menores de ella que vivan en compañía de sus padres la situación es distinta. En este último, por exigencia de nuestro Código Civil, además debemos indagar si se trata de un fideicomiso establecido para que el fiduciario cumpla ciertas obligaciones de la patria potestad, que en todo caso, corresponden al padre, como sería la administración de los bienes de los hijos menores de edad

que vivan en compañía de sus padres, las cuales no son renunciables, por pertenecer al Derecho público. También si la creación del fideicomiso equivale a una renuncia al derecho de usufructo que gozan los padres sobre los bienes de los hijos menores de edad que vivan en su compañía, el cual no puede ser enajenado—2 Manresa: Comentarios al Código Civil Español 47, (Sexta ed. del Instituto Editorial Reus del 1944) —porque está constituído para ayudar al padre en las responsabilidades económicas que se derivan de la patria potestad y se considera más establecido en favor del hijo menor que en beneficio del padre. En los principios generales del fideicomiso norteamericano, el fideicomiso para el sostenimiento de hijos menores de edad no es favorecido, puesto que cualquier fideicomiso constituído para el fin de cumplir obligaciones paternales, se considera constituído en beneficio del fideicomitente: *Helvering* v. *Stuart*, 317 U. S. 154–172, 87 L. ed. 154, (*Reed*), (1942), cita precisa a la pág. 169 y 170 U. S., 163 y 164 L. ed. (casos posteriores que parecen estar en conflicto se debe a la enmienda por adición de la sec. 167 del estatuto federal hecha en el 1943, que desde luego, no está incorporada a la sec. 20 de nuestra Ley de Contribuciones sobre Ingresos de 1924). Desde el punto de vista del Derecho Contributivo norteamericano el principio es el mismo: 158 A.L.R. 1324 (1945).

Aunque en este caso los fideicomitentes declaran que *su intención es constituir un fideicomiso para beneficio de sus hijos menores*, lo que en realidad de derecho realizan, es una donación a favor de dos hijos menores de edad que viven en su compañía. Ya hemos visto que de acuerdo con el art. 156 de nuestro Código Civil, en un caso como éste, tanto la propiedad como el usufructo pertenecen a los padres, por ser bienes adquiridos por los hijos menores de edad del caudal de sus padres. En los principios generales del fideicomiso norteamericano la regla de mayoría es, que una donación imperfecta no debe convalidarse, so pretexto de que lo que se contituye es un fideicomiso, 1 Scott *on Trusts* 182, sec. 31 (ed.

citada) ; *Weil* v. *Commissioner of Internal Revenue*, 82 F.2d 561 (*Sibley*) (1936), cita precisa a la pág. 563, 23 A.L.R.2d 1188 (1952). Desde el punto de vista del Derecho Contributivo norteamericano, la responsabilidad contributiva del donante sería igual que la del fideicomitente si no puede establecerse la separabilidad de las utilidades de los bienes donados : 149 A.L.R. 638 (1944).

4. En este caso los fideicomisos se constituyen sobre dos certificados de acciones. De acuerdo con el art. 837 del mismo Código, el fideicomiso puede constituirse sobre todas clases de bienes muebles y de acuerdo con el art. 268 del mismo Código las acciones se consideran propiedad mueble. De acuerdo con los principios generales del fideicomiso norteamericano un fideicomiso sobre acciones de corporación sería igualmente válido. Desde el punto de vista del Derecho Contributivo sería igualmente válido, 166 A.L.R. 1310 et seq. (1947).

En cuanto a la entrega y registro de las acciones fideicomitidas, el art. 834 de nuestro Código Civil exige la transmisión de los bienes a una tercera persona pero el art. 849 del mismo Código, referente a fideicomisos declara, que el fideicomiso empieza desde que el fiduciario acepta el mandato con lo cual se hace irrevocable. En los principios generales del fideicomiso norteamericano tomar posesión de la propiedad fideicomitida es uno de los deberes del fiduciario : 2 Scott *on Trust* 931 sec. 175, y en caso de acciones de corporación conseguir que éstas se inscriban a su nombre, pág. 931 ante. Si no se ha hecho un traspaso directo pero hay un documento suficiente para servir como endoso, la transferencia se declara válida : 12 Fletcher *Cyclopedia of the Law of Private Corporations* 299 et. seq. sec. 5488, (ed. de Callaghan and Company del 1932) 38 A.L.R. 1366 et seq. (1925). Desde el punto de vista del Derecho Contributivo norteamericano la donación o el fideicomiso se considera válido aunque no se haya efectuado el registro : 38 A.L.R. 1366 et seq. 1925, *Weil* v. *Commisioner of Internal Revenue*, supra, cita

precisa a la pág. 563. Si bien en este caso, las acciones fideicomitidas aparecen inscritas a nombre de los menores fideicomisarios, no es menos cierto que de acuerdo con el art. 156 de nuestro Código Civil la propiedad y el usufructo pertenecían al padre, y habiendo éste procedido a entregar dichas acciones delante de un Notario Público al fiduciario, y constituyendo la escritura un endoso suficiente en documento aparte, el fiduciario puede obligar a la corporación a que traspase dichas acciones a su nombre.

5. En el fideicomiso creado en este caso, los fideicomitentes autorizaron al fiduciario a invertir "toda cantidad procedente de las utilidades de cada uno de los fideicomisarios que no hayan sido retiradas por éstos". Como se trata de fideicomisarios menores de edad, el efecto práctico de dicha cláusula es que los fideicomitentes se reservaron el derecho de retirar ellos cualesquiera utilidades del fideicomiso. Pero el art. 834 autoriza el fideicomiso a favor del propio fideicomitente. De manera pues, que esta disposición no resultaría nula en un fideicomiso condicional, aunque el efecto práctico sea que el propio fideicomitente reciba las utilidades del fideicomiso. En los principios generales del fideicomiso norteamericano la situación sería la misma. Desde el punto de vista del Derecho Contributivo norteamericano, la situación resulta mucho más compleja.

Cuando los fideicomisarios tienen derecho a retirar aquellas utilidades del cuerpo de bienes que sean necesarias para su cuidado y alimentación, se ha dicho que el fiduciario, en un fideicomiso condicional de esta naturaleza, no tiene derecho a resistir la entrega de dichas utilidades y las mismas serían tasables a los beneficiarios. Si los fideicomisarios no retiran dichas utilidades, las mismas son tasables al fiduciario como ingreso sujeto a distribución futura: 6 Merten's 339, sec. 36.57, (ed. citada).

Para determinar la separabilidad de los ingresos del fideicomitente de los ingresos de los bienes fideicomitidos, el control que dicho fideicomitente se haya reservado sobre las

utilidades resulta uno de los elementos a considerarse en la posibilidad, de que a pesar de la distribución en el título de los bienes, la renta de ellos sigue fluyendo hacia la misma persona. La filosofía práctica que inspira siempre la indagación contributiva es, que deben considerarse menos las estructuras legales y considerarse más el posible control de la renta por la misma persona. Si la prueba demuestra que el fideicomitente, mientras dure, el fideicomiso, ha retenido el control económico y la administración del fideicomiso en tal forma, que a pesar de las estructuras legales y del control y la administración nominales ejercitados por el fiduciario, el fideicomitente sigue en el control económico de los bienes y en el disfrute de sus utilidades, el fideicomiso no ha creado separabilidad alguna en las utilidades y éstas deben ser tasables al fideicomitente.

El control en la posesión o en la administración de los bienes fideicomitidos se puede retener de distintas maneras: (1) convirtiéndose el propio fideicomitente en fiduciario; (2) designando a un miembro de su propia familia como beneficiario; (3) designando a un miembro de su propia familia o a un empleado o a un socio suyo como fiduciario.

El poder del fideicomitente para actuar como fiduciario es una de las circunstancias desfavorables a la separabilidad de utilidades a tomarse en cuenta para determinar la responsabilidad contributiva del fideicomitente: 166 A.L.R. 1316, pero el hecho de que el fideicomitente sea a su vez fiduciario, por sí solo, no es suficiente para establecer la inseparabilidad de las utilidades.

El hecho de que el beneficiario sea un miembro de la familia del fideicomitente, es otra de las circunstancias desfavorables a tomarse en cuenta para determinar la responsabilidad contributiva del fideicomitente, 166 A.L.R. 1315; *Helvering* v. *Stuart*, supra, cita precisa a las págs. 169 y 170 U. S., 163 y 164 L. ed.; *Helvering* v. *Clifford*, 309 U. S. 331 y 84 L. ed. 788 *(Douglas)*, (1940), cita precisa a la pág. 336 U. S., 792 L. ed. Haciendo uso del nuevo término acuñado por el

Juez Frank en su opinión disidente en el caso de *Cushman* v. *Commissioner of Internal Revenue*, 153 F.2d 510 (1946), cita precisa a la pág. 515, la cliffordización ha perdido terreno en la jurisprudencia contributiva—166 A.L.R. 1325—sobre todo en casos de fideicomisos irrevocables de larga duración a favor de hijos menores, cuando no hay conflicto con la ley local. En el caso de Puerto Rico, según hemos visto, hay conflicto con la ley local, porque no se reconoce la separabilidad de bienes y utilidades entre padres e hijos menores que vivan en su compañía, si los bienes fideicomitidos pertenecieron en su origen al caudal paterno.

El hecho de que el fiduciario sea un miembro de la familia del fideicomitente, o un empleado o socio suyo, también se considera como una de las circunstancias desfavorables a tomarse en cuenta para determinar la responsabilidad contributiva del fideicomitente: 166 A.L.R. 1320, aunque por sí sola, tampoco constituye un indicio final y definitivo sobre la inseparabilidad de las utilidades. En el caso de Puerto Rico habría conflicto con la ley local en aquellas designaciones de fiduciarios que recayeran en la mujer casada cuando el fideicomitente resulte ser su marido, ya que las enajenaciones entre marido y mujer están prohibidas, mientras dure el matrimonio, y la transferencia en el fideicomiso de los bienes fideicomitidos es en pleno dominio.

Cuando los aspectos más sobresalientes de la jurisprudencia contributiva norteamericana referente a fideicomisos, se examina con objetividad, sin enajenar previamente nuestra conciencia a ninguna tendencia específica, se comprende que la diversidad de sus contenidos doctrinales, está regido en primer término, en cuanto a su validez, por la ley local del estado: *Cusham* v. *Commissioner of Internal Revenue*, 153 F.2d 510, (*Chase*), (1946), cita precisa a la pág. 511; *Blair* v. *Commissioner of Internal Revenue*, 300 U. S. 5, 81 L. ed. 465 (*Hughes*) (1937), cita precisa a las págs. 9 y 10 U. S., 469 L. ed., y está regido, en segundo término en cuanto a su eficacia para fines contributivos por la Ley Federal, (en el

caso de Puerto Rico la Ley de Rentas del 1924 del Congreso de Estados Unidos de la cual se tomó la nuestra), *Helvering* v. *Stuart*, 317 U. S. 154, 87 L. ed. 154, (*Reed*) (1946), cita precisa a las págs. 161 y 162 U. S., 159 L. ed.

En Puerto Rico, como cuestión de validez de acuerdo con la ley local, no puede constituirse por los padres un fideicomiso en beneficio de hijos menores de edad, que vivan en compañía de sus padres, porque el Código Civil de Puerto Rico no reconoce la separabilidad de bienes o utilidades entre menores de edad y sus padres, cuando tales bienes provengan del caudal de los padres. Aunque en Puerto Rico está permitido el fideicomiso en beneficio del propio fideicomitente, como sería el caso de la renta vitalicia, del censo reservativo, de la entrega de bienes con pacto anticrético para el pago de acreencias, no puede considerarse el fideicomiso en beneficio de un hijo menor que vivía en compañía de sus padres, como un fideicomiso en beneficio del padre, porque ni la administración de los bienes de tal hijo, ni la enajenación del usufructo constituído sobre los mismos resultan renunciables o enajenables como cuestión de Derecho público, no siendo por lo tanto posible, mediante la creación de un fideicomiso, relevar a un padre de tales obligaciones paternofiliales.

Siendo esto así, tal fideicomiso no tendría eficacia para los fines contributivos correspondientes. Aun de ser válido como estructura legal el fideicomiso bajo estudio no nos sentiríamos inclinados a declarar su eficacia para evitar la imposición de contribuciones sobre ingresos, porque cualquier fideicomiso genérico, creado en Puerto Rico para los únicos fines de evitar el pago de contribuciones sobre ingresos, no debe ser favorecido, 1 Scott *on Trusts* 440, sec. 63.1, máxime cuando la estructura creada permite que las rentas fluyan hacia la misma persona que lo crea.

*Debe confirmarse la sentencia apelada.*

Los Jueces Presidente Sr. Snyder y Asociado Sr. Pérez Pimentel concurren en el resultado.